**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:12CR261 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| TIMOTHY WILKINS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| DEFENDANT. | ) | |
| | ) | |

Before the Court is the motion of defendant Timothy Wilkins to suppress evidence resulting from a traffic stop and search conducted on April 30, 2012. (Doc. No. 16.) The government has filed a response in opposition, (Doc. No. 20), and the Court held a suppression hearing on August 22, 2012 (Doc. No. 26). The matter is ripe for determination. For the reasons set forth below, the defendant's motion is DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Just after midnight on April 30, 2012, Cleveland Police Officers Vasile Nan and Steven Schmitz were on patrol, driving eastbound on Clarebird Avenue in Cleveland, Ohio. (Hr'g Tr. [Doc. No. 26] at 96.) As the officers approached the intersection of Clarebird and E. 113th St., they saw two cars turn left from the next street, E. 114th, onto Clarebird and continue eastbound, a short distance in front of the officers. (*Id.*) Both cars failed to stop at the stop sign at

Clarebird and E. 114th. (*Id.*) Officers Nan and Schmitz had an unobstructed view, in adequate lighting conditions, of the cars as they ran the stop sign. (*Id.* at 96–98.)

Having observed the stop sign violation by both cars, the officers discussed which vehicle they would pull over, deciding on the car directly in front of them, a maroon Lexus. (*Id.* at 96–97.) Officer Schmitz sent the car's license plate number to the police dispatcher to determine whether any warrants were attached to the plate. (*Id.* at 115–16.) Before Schmitz had received a response from the dispatcher, the Lexus turned left from Clarebird onto E. 116th St., rolling through the stop sign at that intersection. (*Id.* at 98.) Again, the officers witnessed the car with an unobstructed view, in adequate lighting conditions, as it failed to stop at the second stop sign. (*Id.* at 98–99.) Officer Nan engaged the lights and sirens and pulled over the Lexus. (*Id.* at 119.)

Approximately thirty seconds after pulling over the Lexus, both officers exited the patrol car and approached the vehicle. (*Id.* at 163.) Officer Nan walked to the driver's side, and Officer Schmitz, just behind Nan, moved toward the passenger's side. (*Id.* at 163–64.) When Officer Nan reached the Lexus, he saw that the driver, Lincoln Studgions, had rolled down the window and was holding out a piece of paper for Nan to inspect. (*Id.* at 164–65.) Through the open window, Officer Nan took the paper from Mr. Studgions and discovered it to be a letter certifying that Studgions had recently completed police academy training. (*Id.* at 164.) Officer Nan returned the letter to Studgions and asked him for his driver's license and registration. (*Id.* at 165.) As Studgions was retrieving his license, Officer Nan detected the smell of alcohol coming from inside the vehicle. (*Id.*) The officer immediately suspected that there might be open

containers of alcohol inside the Lexus, a further violation of the law,[1] and began to investigate. (*Id.* at 165.)

Less than one minute had passed since the officers pulled over the Lexus (*Id.* at 180), and neither officer had finished investigating the stop sign violations (*Id.*) or written Studgions a citation (*Id.* at 199). In fact, the officers had not yet verified Studgeons' status as the driver of the car. (*Id.* at 225.) Officer Nan asked if anyone in the car had been drinking. (*Id.* at 165.) Mr. Studgions responded that he had not, while Mr. Wilkins replied that he had. (*Id.*)

Officer Schmitz, standing at the passenger's side of the Lexus, heard Officer Nan announce that he smelled alcohol, specifically cognac, within the vehicle. (*Id.* at 100.) Officer Schmitz signaled to Mr. Wilkins to roll down his window, which he did, and Schmitz also immediately detected the smell of alcohol. (*Id.*) Schmitz moved toward the front right portion of the car to get a better view of the passenger area. (*Id.* at 100–01.) Looking through the corner of the front windshield, Officer Schmitz saw beneath Mr. Wilkins, in plain view, "a cup half stashed underneath the seat of the vehicle, half exposed . . . crunched up a little bit with a caramelized beverage inside of it." (*Id.* at 101.) This occurred approximately one and a half to two minutes from the time the officers pulled over the car. (*Id.* at 102.) Believing the liquid might be an alcoholic beverage, Officer Schmitz asked Mr. Wilkins to hand him the cup. (*Id.* at 102–03.) As Mr. Wilkins attempted to hand the Styrofoam cup to Officer Schmitz, it broke into two pieces. (*Id.* at 103.) Mr. Wilkins, having dropped the larger piece back onto the floor of the

---

[1] Section 4301.62(B)(4) of the Ohio Revised Code provides:

> No person shall have in the person's possession an opened container of beer or intoxicating liquor in any of the following circumstances: . . . while operating or being a passenger in or on any motor vehicle on any street, highway, or other public or private property open to the public for purposes of vehicular travel or parking.

Lexus, handed the smaller piece to Schmitz. (*Id.*) Schmitz sniffed the cup fragment and detected the presence of alcohol. (*Id.* at 104.)

Officer Schmitz informed Officer Nan that he detected alcohol on the piece of the cup, and the officers asked both Studgeons and Wilkins to step out of the vehicle. (*Id.* at 167–68.) Schmitz patted down both men for weapons, ordering them to sit on the curb, unhandcuffed. (*Id.* at 131–32.) Officer Schmitz stayed with them while Officer Nan went to the passenger's side of the Lexus to retrieve the remainder of the cup from the floor. (*Id.* at 168.) As Officer Nan bent over to gather the rest of the cup, he saw the handle and magazine of a gun protruding in plain view from the space between the passenger's seat and the center console. (*Id.* at 168, 175–76.) Officer Nan took the magazine out of the gun to render it safe, placed the gun on the seat of the car, and walked over to Officer Schmitz, indicating to Schmitz non-verbally that he had found a gun. (*Id.* at 176.) The officers then handcuffed both men, Officer Schmitz read them their *Miranda* rights (*Id.* at 105), and they began to investigate a possible firearm violation (*Id.* at 105, 225). The officers had not yet completed investigation of the traffic violation or the alcohol violation. (*Id.* at 226.)

During their investigation of the potential weapons violation, the defendant voluntarily stated that the gun belonged to him (*Id.* at 136–37), that he had found the gun earlier that day (*Id.*), and that Mr. Studgions had no knowledge that the gun was in the vehicle (*Id.* at 106). The officers released Mr. Studgions with a citation for a stop sign violation (*Id.* at 137),[2] and arrested Mr. Wilkins for carrying a concealed weapon (*Id.* at 138).

---

[2] Despite witnessing two stop sign violations, the officers chose to cite Studgions only for the first violation, because Studgions drove through the first stop sign without slowing down, as opposed to "rolling through" the second stop sign. (Hr'g Tr. at 117–18.)

4

Mr. Studgions pled not guilty to the stop sign violation (*Id.* at 269) and contends that he made a complete stop at both stop signs (*Id.* at 238). The charge was dismissed for want of prosecution (Mot. to Suppress, Ex. A, Docket List, *State of Ohio v. Studgions*, 2012 TRD 027861 [Doc. No. 16–1] at 64–65) when Officer Schmitz, subpoenaed to appear because he wrote the citation, failed to show up for a hearing (Hr'g Tr. at 142–43).[3]

Mr. Wilkins was subsequently indicted for violation of § 18 U.S.C. § 922(g)(1), possession of a weapon by a convicted felon. (Doc. No. 1.) He moved to suppress the firearm found in the car on grounds that (1) the officers lacked probable cause to initiate the stop that led to his arrest; and (2) even if the initial stop was constitutional, the officers unconstitutionally exceeded the scope of the initial stop. (Doc. No. 16.) The government opposed the motion to suppress, arguing that both the initial stop and subsequent search were lawful. (Doc. No. 20.) The Court held an evidentiary hearing on the motion to suppress, at which Officers Schmitz and Nan testified on behalf of the government, and Studgions testified on behalf of the defendant. (Doc. No. 26). Because the officers had probable cause to initiate the traffic stop, and because the officers did not unlawfully exceed the scope of that stop, the defendant's motion is DENIED.

## II. LAW AND ANALYSIS

**A. The Officers Had Probable Cause to Initiate the Stop**

The defendant argues that the officers lacked probable cause to effect a traffic stop of the Lexus because the driver, Mr. Studgeons, did not in fact run a stop sign.

---

[3] Officer Schmitz testified that he was unable to show up for the hearing because he was moving that day and forgot. (*Id.* at 108.) Additionally, he believed, incorrectly, that if he failed to appear, the matter would be continued, since hearings are continued one time when a defendant fails to appear. (*Id.*) The Court trusts, going forward, that Officer Schmitz will be more conscientious in fulfilling his official duties in appearing for scheduled court dates.

The Fourth Amendment proscribes warrantless searches and seizures, U.S. CONST. amend. IV, but because its "ultimate touchstone . . . is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (citations omitted). Stopping a vehicle and detaining its occupants constitutes a seizure for Fourth Amendment purposes, *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000), and therefore must not be unreasonable under the totality of the circumstances. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* "The Fourth Amendment . . . permits an officer who has probable cause to believe that a traffic violation is occurring to detain the automobile, regardless of the officer's subjective motivation for the stop." *United States v. Burton*, 334 F.3d 514, 516 (6th Cir.2003). Probable cause is generally defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (citation omitted). The probable cause analysis embodies "a flexible, commonsense standard [that] requires that the facts available to the officer would warrant a man of reasonable caution" to believe that a violation has occurred. *United States v. Copeland*, 321 F.3d 582, 592 (6th Cir. 2003) (quoting *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir.1993) (en banc)). The government bears the burden to prove that a warrantless search was proper. *United States v. Haynes*, 301 F.3d 669, 677 (6th Cir.2002).

The defendant argues in his brief that the officers did not have probable cause to make a traffic stop because Studgions' traffic citation was dismissed by the Cleveland Municipal Court. (Def.'s Mot. to Suppress 58–60.) Despite the defendant's failure to flesh out this

6

assertion, the Court will consider this to be, in part, an argument that issue preclusion, or collateral estoppel, attaches to the dismissal, precluding further consideration in this Court of whether the officers had probable cause to stop Studgions for what they observed as traffic violations. This is incorrect. Among other things, an issue must be "actually litigated and determined" in a prior case for issue preclusion to attach going forward. *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 326 (1955); *see also Fondel v. Ford Motor Co.*, No. 85-1759, 1986 WL 17729, at *1 (6th Cir. Sept. 25, 1986) ("[I]ssue preclusion . . . does not attach to a judgment dismissing a suit for lack of prosecution."). There is no evidence that Studgions actually litigated in municipal court whether he ran a stop sign and no evidence that a fact-finder ruled on that issue. The record shows that Studgions' case was dismissed simply because Officer Schmitz did not appear for the hearing.

The Court finds that the officers had probable cause to make the initial traffic stop. At the suppression hearing, Officers Schmitz and Nan credibly testified that they saw the vehicle in which the defendant was a passenger fail to stop at two stop signs (and in this regard, the Court rejects any suggestion by Studgeons that he did stop), that they had an unimpeded view of the vehicle, and that lighting conditions were adequate. (Hr'g Tr. at 96–99.) The officers thus had probable cause to believe that the driver of the vehicle, Studgeons, had violated Cleveland Codified Ordinance 431.19 and OHIO REV. CODE § 4511.43(A), both of which require a vehicle to stop at intersections marked with a stop sign. Once the officers had observed the traffic violations, they had probable cause to make the traffic stop. *United States v. Burton*, 334 F.3d 514, 517 (6th Cir. 2003); *United States v. Ferguson*, 8 F.3d 385, 390–91 (6th Cir. 1993); *see also United States v. Cleveland*, No. 97-3297, 165 F.3d 28 (table), at *2 (6th Cir. Sept. 11, 1998)

7

("Because the car ran the stop sign, the ensuing stop was lawful.").[4] Defendant's first argument, that the officers did not have probable cause to initiate the traffic stop, is, therefore, without merit.

## B. The Officers Did Not Unlawfully Exceed the Scope of the Initial Stop

Defendant next argues that, even if the initial traffic stop were lawful, the officers exceeded the scope of the stop by (1) detaining the defendant for an unlawful length of time; and (2) searching the vehicle without the authority to do so.

*1. The Duration of the Stop Was Lawful*

"Once the purpose of an ordinary traffic stop is completed, [officers] may not 'further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *United States v. Blair*, 524 F.3d 740, 752 (6th Cir. 2008) (quoting *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995)). "Reasonable suspicion requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist after a traffic stop." *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). To determine whether an officer has reasonable suspicion

---

[4] "Caselaw in this circuit is in conflict as to whether an officer must possess 'probable cause' as opposed to only 'reasonable suspicion' in believing that a traffic violation has occurred before stopping the vehicle in question." *United States v. Westmoreland*, 224 F. App'x 470, 473 (6th Cir. 2007) (citing *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007)). Indeed, some cases have applied a different standard based upon whether the offense for which the vehicle was stopped was civil or criminal, *see United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing *Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n. 6 (6th Cir. 2004)), and others based upon whether the offense was ongoing or completed. *See United States v. Simpson*, 520 F.3d 531, 538–41 (6th Cir. 2008). "Reasonable suspicion" is a lower standard than "probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Here, the Court finds that the facts established by the Government readily satisfy the higher probable cause standard, thus making it unnecessary for the Court to determine if the lower standard applies.

to further detain a vehicle or its occupants, the Court must analyze the totality of the circumstances. *Smith*, 263 F.3d at 588.

Based on review of the totality of the circumstances, the Court finds that the officers had reasonable suspicion to justify detaining the defendant, and the detention was for a reasonable time. Officer Nan smelled alcohol coming from the vehicle within seconds of arriving at the driver's door of the Lexus and within one minute of pulling it over. (Hr'g Tr. at 180). Officer Schmitz immediately confirmed the smell of alcohol when he asked the defendant to roll down the passenger window next to where the defendant was seated. (*Id.* at 100.) At that point, the officers had reasonable suspicion that an alcohol violation had occurred. *See, e.g.*, *United States v. Black*, 240 Fed. App'x 95, 101–102 (6th Cir. 2007) (strong odor of alcohol coming from vehicle and open container of alcohol within vehicle provide probable cause for arrest for open-container violation). The officers had not yet finished investigating the stop sign violations that gave rise to the traffic stop when they began to suspect the separate violation. (Hr'g Tr. at 180.) In further confirming their suspicions, Officer Schmitz was easily able to observe a cup containing a caramel-colored liquid on the floor of the vehicle. (*Id.* at 101.) Suspecting it was liquor, Officer Schmitz appropriately asked the defendant to hand him the cup. (*Id.* at 102.) Because the cup broke, Officer Schmitz was handed only a fragment of the cup, but it was enough of a fragment for Officer Schmitz to determine that it smelled of alcohol. (*Id.* at 103–04.) At this point, the officers had even more evidence to substantiate their belief that yet another violation of the law had occurred, specifically, a violation of Ohio's open container law, and they were justified in extending their stop to investigate the additional offense. *United States v. Perez*, 440 F.3d 363, 370 (6th Cir. 2006).

Immediately after the discovery of the cup, the defendant and Studgions were properly removed from the car, patted down, and led to the curb, to allow Officer Nan to return to the car to retrieve the rest of the cup. (Hr'g Tr. at 168.) It was at this point, when he reached down to retrieve the portion of the cup that remained in the car, that he observed the firearm in plain sight. (Hr'g Tr. at 168.) This, of course, in turn, gave the officers reasonable suspicion that a firearm offense had occurred. The officers had yet to complete their investigation of the stop sign violations or the open container violation when the firearm was discovered. (*Id.* at 135–37.)

There is no evidence that the officers took any action to extend the defendant's detention beyond a reasonable time. Rather, the initial stop for the stop sign violation immediately led to reasonable suspicion of an open container violation, the investigation of which, in turn, quickly resulted in reasonable suspicion of a firearm violation. Because all of these events occurred within an unbroken chain of events in a short period of time—just minutes—the officers' actions did not exceed the scope of the original traffic stop.

*2. Retrieval of the Remainder of the Cup Was Lawful*

The defendant asserts in his brief that Officer Nan's retrieval of the rest of the cup and subsequent discovery of the gun in the Lexus is prohibited by *Arizona v. Gant*, 556 U.S. 332 (2009). In *Gant*, the Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search *or it is reasonable to believe the vehicle contains evidence of the offense of arrest.*" 556 U.S. at 351 (emphasis added). The defendant quotes the proper holding, but ignores its second half, arguing that Officer Nan's retrieval of the rest of the cup is unconstitutional because Mr. Studgions and the defendant, sitting on the curb behind the vehicle, did not present safety concerns. (Def.'s Mot. to Suppress at 62).

The Court agrees with the government that it was reasonable for the officers to believe that evidence of the crime they were investigating—an open container violation—might be found in the vehicle. Officer Schmitz saw the cup break and knew that the remainder of the cup was still in the vehicle. (Hr'g Tr. at 103–04.) He smelled the piece of the cup the defendant gave him and detected the presence of alcohol. (*Id.*) Schmitz then told Nan what he had found. (*Id.* at 167.) At this point, it was eminently reasonable for the officers to believe the vehicle, where they knew the rest of the cup remained, contained evidence of the open container offense.

The defendant does not contest the propriety of seizing the gun in the event that it was lawful for the officers to retrieve the remainder of the cup. The Court notes, however, that because Officer Nan's retrieval of the cup was appropriate under *Gant*, and because the gun came into plain view during that retrieval, the gun was properly seized. *Horton v. California*, 496 U.S. 128, 135 (1990) ("An object that comes into view during a search incident to arrest that is appropriately limited in scope under existing law may be seized without a warrant.").

### III. CONCLUSION

For the foregoing reasons, the defendant's Motion to Suppress is DENIED.

**IT IS SO ORDERED**.

Dated: September 6, 2012

                                        **HONORABLE SARA LIOI**
                                        **UNITED STATES DISTRICT JUDGE**